■ JAMES J. RODGERS, Respondent,. v LENOX HILL HOSPITAL, Appellant. [657 NYS2d 616] —Order, Supreme Court, New York County (Paula Omansky, J.), entered on or about July 11, 1996, which, in an action for wrongful termination under Labor Law § 740, *inter alia,* denied defendant's motion to add counterclaims for breach of fiduciary duty and fraud except those based on plaintiff's alleged falsifications of his time records, modified, on the law, to permit the allegations of false time records to proceed under the counterclaim for fraud only, and otherwise affirmed, without costs.

The proposed counterclaims that are the subject of the appeal should be rejected as patently without merit. Although defendant seeks no appellate relief concerning the treatment of its allegations relating to false time records, and plaintiff did not file a cross appeal, we nevertheless modify to make clear that such allegations state a course of action only for fraud, and not for breach of fiduciary duty, such modification being necessary to just and complete relief (*see, Bukhatir Mackinnon v Sarfraz*, 130 AD2d 358).

We have considered defendant's other contentions and find them to be without merit. Concur—Murphy, P. J., Rosenberger and Mazzarelli, JJ.

Rubin, J., dissents in part in a memorandum as follows: Plaintiff James J. Rodgers contends that he was terminated from his position as director of the emergency medical services department for defendant Lenox Hill Hospital in April 1992 in retaliation for his investigation into an incident in which emergency medical technicians declared a patient dead when she was in fact still alive. He brought this action seeking, *inter alia,* recovery of lost wages and benefits and reinstatement to his former position. Construing the complaint in a light most

favorable to plaintiff, this Court previously decided that it comes within the purview of Labor Law § 740, the so-called "whistleblower statute" (*Rodgers v Lenox Hill Hosp.*, 211 AD2d 248, 251).

Defendant subsequently moved to amend its answer to add a third defense and a counterclaim, contending that plaintiff was terminated because, among other misdeeds, he attempted to cover up the wrongdoing of the responding emergency medical technicians by giving false information to his superiors, by failing to take prompt administrative action in response to the incident and by maligning the hospital to investigators from the New York State Department of Health and the New York City Emergency Medical Service. In its proposed amended counterclaim, defendant alleges that Rodgers further breached his "fiduciary duty to provide honest and faithful services" to Lenox Hill Hospital by falsifying his time sheets and by scheming to sell his services as a consultant to a hospital he was directed by his employer to assist in setting up its own ambulance service. As damages, defendant seeks to recover plaintiff's salary for the period from May 1988 until his termination in April 1992.

This appeal presents the narrow issue of whether defendant should be permitted to amend its answer. It also raises the broader question of when an employer can interpose the employee's misconduct in the performance of his duties as the basis of a defense to the demand for payment of back wages and as grounds for a counterclaim for recovery of compensation already received by the employee.

Pursuant to CPLR 3025 (b), "leave to amend a pleading is freely granted as a matter of discretion in the absence of prejudice or surprise" (*Stroock & Stroock & Lavan v Beltramini*, 157 AD2d 590, 591 [citing *Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18; *Fahey v County of Ontario*, 44 NY2d 934]). However, "this court has consistently held that, in order to conserve judicial resources, an examination of the underlying merits of the proposed causes of action is warranted (*Brennan v City of New York*, 99 AD2d 445; *East Asiatic Co. v Corash*, 34 AD2d 432). Leave to amend will be denied where the proposed pleading fails to state a cause of action" (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209). As this Court pointed out in a similar matter, "every pleading question should be approached in the light of the Civil Practice Law and Rules enactment that pleadings 'shall be liberally construed. Defects shall be ignored if a substantial right of a party is not prejudiced.' (CPLR 3026.) * * * [T]he burden is expressly placed upon one who attacks a

pleading for deficiencies in its allegations to show that he is prejudiced" (*Foley v D'Agostino*, 21 AD2d 60, 65).

Supreme Court permitted defendant to interpose a counterclaim sounding in fraud for damages sustained by reason of plaintiff's falsification of his time sheets, but otherwise denied the motion to amend the answer. The court reasoned, "Plaintiff's attempt to sell his consulting services was apparently unsuccessful, and the alleged scheme to cover up an allegedly negligent handling of an incident was apparently an isolated incident." .

It may be a fine point, but the possible absence of economic loss to defendant does not require the conclusion that defendant has therefore failed to state a cause of action. "The employer-employee relationship is one of contract, express or implied (*Meo v Bloomgarden*, 237 App Div 325, 327, app dsmd 262 NY 72) and, in considering the obligations of one to the other, the relevant law is that of master-servant and principal-agent (see 9 Williston, Contracts [3d ed], § 1012, p 13; Restatement, Agency 2d, § 2, Comment *a*, subd d). Fundamental to that relationship is the proposition that an employee is to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties' (*Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138). Clearly, an employee must not seek to acquire indirect advantages from third persons for performing duties and obligations owed to his employer (9 Williston, Contracts [3d ed], § 1014C, p 72)" (*Western Elec. Co. v Brenner*, 41 NY2d 291, 295). Plaintiff was not successful in his scheme to sell the very consulting services he was directed to render by his employer. Therefore, he is not in possession of "any compensation secretly or improperly received from others beyond the compensation to which the employee is entitled [which] is deemed to be held by him on a constructive trust for his employer (9 Williston, Contracts [3d ed], § 1015, p 84)" (*supra*, at 295). But that is not for want of trying. The only appreciable distinction between *Western Elec. Co. v Brenner* (*supra*) and the matter at bar is the relative success of the scheme to obtain funds for services the employee was required to render on behalf of his employer. While a trier of fact might conclude, as Supreme Court did in deciding this motion, that Lenox Hill Hospital sustained no consequential damages, it has nevertheless stated a valid cause of action in contract for which nominal damages are recoverable. As the Court of Appeals observed in *Kronos, Inc. v AVX Corp.* (81 NY2d 90, 95),

"Nominal damages are always available in breach of contract actions (5 Corbin, Contracts § 1001, at 29)".

"The test on a motion to dismiss for insufficiency of the pleadings is not whether the plaintiff has artfully drafted the complaint but whether, deeming the complaint to allege whatever can be reasonably implied from its statements, a cause of action can be sustained" (*Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46, 48, citing *Feinberg v Bache Halsey Stuart*, 61 AD2d 135, 137-138; *Edwards v Codd*, 59 AD2d 148, 149). Whether or not the proposed counterclaim may be said to state a cause of action for "breach of fiduciary duty", as defendant denominates its counterclaim, it states a cause of action for breach of contract (*see*, *McKinney v Bellevue Hosp.*, 183 AD2d 563). The proposed amended pleading is therefore not "patently insufficient on its face" (*Hospital for Joint Diseases Orthopaedic Inst. v Katsikis Envtl. Contrs.*, 173 AD2d 210; *Stroock & Stroock & Lavan v Beltramini*, 157 AD2d 590, *supra*), and it was error for Supreme Court to deny defendant leave to add the counterclaim. The extent of damages is simply not an appropriate consideration for a court deciding a motion to amend pleadings.

The hospital's position that its employee's misconduct, though not the enunciated basis for plaintiff's termination, is nevertheless a defense to his action for wrongful discharge is also valid. Confronting this question, one court concluded that, under the law of this State, facts unknown at the time employment was terminated still constitute a defense to a wrongful discharge action in which the employee seeks to recover lost wages. "For example: if 'good reason for [the] discharge * * * actually existed at the time of discharge, although it was then unknown to the employer * * * the employer may avail himself of such * * * in defense of' the action (*Hutchinson v Washburn*, 80 App Div 367 [2d Dept 1903]). ' "If there was * * * a sufficient reason for the discharge, even though that was not the reason assigned * * * or the reason which really actuated it, or even if the sufficient cause was not known to defendant when plaintiff was discharged" * * * the discharge can be justified' (*Beck v Fybern Holding Corp.*, 238 App Div 25, 28-29 [4th Dept 1933]). However, the pertinent rule regarding 'dishonesty of the servant,' stated long ago, is that to bar recovery the employee's act must be 'misconduct and unfaithfulness which substantially violate * * * the contract of service' (*Turner v Kouwenhoven*, 100 NY 115, 120 [1885]; *see also*, *Sundland v Korfund Co.*, 260 App Div 80 [1st Dept 1940]). In other words, an employer has a complete defense only when it can prove

' "[f]lagrant acts of dishonesty * * * which *seriously* affect the master's interest, *continued* during the service" ' (*Pictorial Films v Salzburg*, 106 NYS2d 626, 630 [Sup Ct, NY County 1951]; emphasis in original)" (*Bompane v Enzolabs, Inc.*, 160 Misc 2d 315, 321-322). The court noted, in dictum, that where the basis for termination is misconduct subsequently discovered during the course of employment, "the employer must prove that, had it known of the misconduct, it would have terminated employment" (*Bompane v Enzolabs, Inc.*, 160 Misc 2d 315, 323, *supra*, citing *McKennon v Nashville Banner Publ. Co.*, 797 F Supp 604 [MD Tenn 1992], *revd on other grounds* 513 US 352 [1995]).

The issue before this Court is limited to whether defendant has stated a cognizable defense to the wrongful discharge action, giving it "the benefit of every possible favorable inference" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634; *Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146). Whether defendant's proof will ultimately be adequate to sustain the defense is a matter for the trier of fact. In *Sundland v Korfund Co.* (260 App Div 80, 81, *supra),* this Court stated: "It appears to be the settled law that where the dishonesty of a servant is of such a character as to justify the conclusion that his contract of service has been violated by reason of misconduct and disloyalty which substantially affect the contract of employment, then there may be no recovery for such service * * * Flagrant acts of dishonesty or crime which seriously affect the master's interest, continued during the service, might well be regarded as a bar to the recovery of wages, although the amount received and fraudulently appropriated might be far less than the amount fixed by the contract" (*see, Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138, *supra* [complaint seeking balance of salary due dismissed]). We noted in the *Sundland* case (*supra*, at 82-83) that embezzlement of the employer's money during the course of employment is misconduct that goes to the essence of the contract, barring recovery of back wages by the employee.

It is alleged that plaintiff herein improperly obtained money from his employer by falsifying time records. It is further alleged that, as previously discussed, he attempted to obtain money for consulting services he was directed by his employer to provide. Whether or not these acts collectively amount to flagrant misconduct is a question of fact. As we concluded in *Sundland* (*supra*, at 83), "the question as to whether plaintiff had faithfully performed his undertakings toward defendants is still open * * * If defendants should successfully establish

upon a trial that plaintiff's services have been permeated with dishonesty and disloyalty in a material and substantial way, then upon reason and authority, plaintiff should be barred from recovering the agreed compensation for services so rendered." As in that case, the order presently under review, if permitted to stand, would remove from the trier of fact the question of the employee's misconduct towards defendant (*supra*).

This result is consistent with the conclusion reached by the United States Supreme Court in *McKennon v Nashville Banner Publ. Co.* (513 US 352, *supra*). As here, the Court considered the effect of an employer's after-acquired evidence of employee misconduct, although in the context of an action brought under the Age Discrimination in Employment Act of 1967 (29 USC § 621 *et seq.*), which the Court characterized (at 357) as " 'something of a hybrid' " between Title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*) and the Fair Labor Standards Act of 1938 (29 USC § 201 *et seq.*) (quoting *Lorillard v Pons*, 434 US 575, 578 [1978]). Assuming, for purposes of the summary judgment issue before it, that the employee's wrongdoing warranted termination, the Court held that it does not operate to bar relief under the statute. However, the Court stated, "The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored" *(supra, at 361)*. The Court explained that such misconduct is relevant "to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing" *(supra, at 361)*. It continued: "Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit" *(supra, at 362)*. Finally the Court noted: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge" *(supra, at 362-363)*.

The procedural posture of *McKennon* (*supra*) is to be distinguished from that of the instant matter. The basis of McKennon's age-discrimination action was entirely separate from her wrongdoing, whereas the facts and circumstances alleged to constitute grounds for plaintiff Rodgers' wrongful discharge

action are the selfsame facts asserted by defendant hospital to comprise a legitimate basis for his termination. Rodgers claims that he was fired because of his investigation of an incident involving emergency medical technicians under his control, while the hospital alleges that, in his capacity as director of emergency medical services, plaintiff covered up the incident and placed the blame on the hospital. Even ignoring the substantial public policy grounds underlying the anti-discrimination legislation implicated in *McKennon* (*supra*), it is clear that whether Rodgers can prevail on his cause of action or whether Lenox Hill Hospital will establish a successful defense must await the ultimate resolution of the conflicting allegations at trial.

Defendant hospital's contention that it should be permitted to interpose plaintiff's misconduct by way of a counterclaim seeking recovery of wages already paid to him presents a discrete question. While it is settled that the employee's misconduct may be asserted by way of defense to an action seeking back wages (*Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138, *supra; see, Feiger v Iral Jewelry,* 41 NY2d 928), the circumstances under which the same misconduct will support an action by the employer to recover compensation already paid to the employee are not abundantly clear. The reason is that different consequences are occasioned by the interplay of several variables: the relationship of the employee to the employer, the type of compensation received, and the manner in which the funds sought to be recovered by the employer were obtained. One major source of confusion seems to be the failure, evident in the proposed amended pleading in this matter, to distinguish between a mere employee and one who has a fiduciary relationship with the employer. Another is the failure to distinguish ordinary wages from compensation paid pursuant to a contract of employment or from funds obtained as the result of the diversion of a business opportunity from the employer to the benefit of the employee.

Two cases by this Court are illustrative. In *Johnson v Quayle & Son Corp.* (236 App Div 351), an action for wrongful discharge, the employer counterclaimed to recover for advances paid under the employment contract. A divided Court upheld the counterclaim, noting that it alleged payment in excess of the commissions actually earned under the contract by the employee, stating, "If overpayments were made by way of commissions over and above the drawing account, plaintiff was clearly under an obligation to repay such excess" (*Johnson v Quayle & Son Corp., supra,* at 353). That the obligation to

return the advances was imposed by the contract of employment is clear from the dissenting opinion, which states (at 355), "There are no allegations in the counterclaims to bring them within the rule that there must be an actual or implied promise to repay the commissions" (citing *North-Western Mut. Life Ins. Co. v Mooney,* 108 NY 118). By constrast, in *Kleinfeld v Roburn Agencies* (270 App Div 509), a wrongful discharge action in which the employer counterclaimed to recover wages paid to the employee, this Court held (at 511), "In the absence of a special agreement, an employer may not recover back wages or equivalent drawings paid during a period of completed employment" (citing *Pease Piano Co. v Taylor,* 197 App Div 468, *affd* 232 NY 504). While at least one commentator has found these decisions to be inconsistent (Annotation, *Payments to Employee—Recovery Back,* 88 ALR2d 1437, 1441), the divergent results are explained by the presence or absence of a contractual obligation to repay an amount advanced by the employer against future earnings, whether that obligation is express or implied.

Apart from a contractual basis for recovery, "an employee who makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer, whether or not it was received by the employee in violation of his duty of loyalty (see Restatement, Agency 2d, §§ 388, 403). As here, when such benefit is not turned over, the employer has a choice of remedies, one among them being an action for restitution (see Restatement, Agency 2d, § 421A, Comment on Clause *[c]*)" (*Western Elec. Co. v Brenner,* 41 NY2d, *supra,* at 295; *accord, Lamdin v Broadway Surface Adv. Corp., supra,* at 138).

Finally, an obligation to make restitution to an employer may be derived from the employee's fiduciary capacity. For example, where officers of a corporation organized a competitor, diverted business from their employer and raided its key employees, the Court of Appeals sustained a verdict against various individual employees based upon the "violation of the fiduciary duties of good faith and fair dealing imposed on defendants by their close relationship with plaintiff corporation" (*Jones Co. v Burke,* 306 NY 172, 189). The Court held (at 192) that the plaintiff "was entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct." Similarly, in sustaining causes of action for breach of fiduciary obligations and unfair competition, this Court

noted the obligation imposed upon officers and directors to " 'discharge the duties of their respective positions in good faith'. (Business Corporation Law, § 717.) They may not assume and engage in the promotion of personal interests which are incompatible with the superior interests of their corporation" (*Foley v D'Agostino*, 21 AD2d 60, 66, *supra*).

I cannot agree with the sweeping conclusion, propounded by defendant on this appeal, that " 'New York law establishes that an employee-employer relationship is fiduciary' " (quoting *City of New York v Joseph L. Balkan, Inc.*, 656 F Supp 536, 548 [ED NY 1987]). Certainly, cases can be found in which the extent of recovery is not carefully delineated or in which the basis for recovery of compensation is not precisely expressed. However, it is an elementary rule of legal scholarship that a decision must be read in context. As stated in *Matter of Staber v Fidler* (65 NY2d 529, 535), " 'No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association' " (quoting *Dougherty v Equitable Life Assur. Socy.*, 266 NY 71, 88, *rearg denied* 266 NY 615). A judicial pronouncement is the product of the facts of the particular case and the authority from which the court derives its conclusion and should not be construed without due regard to both.

Representative is *Defler Corp. v Kleeman* (19 AD2d 396), in which the Court stated (at 404), "An employee whose actions are disloyal to the interests of his employer forfeits his right to compensation for services rendered by him (*Lamdin v Broadway Surface Adv. Corp.*, 272 N. Y. 133) and if he is paid without knowledge of his disloyalty he may be compelled to return what he has improperly received". While, on its face, this proclamation supports defendant's position, it is noteworthy that *Defler* involved a conspiracy by an officer of a corporation and others to divert business from his employer to a competing corporation that the defendants had organized. Thus, the case involves both a breach of fiduciary duty by an officer of the plaintiff corporation and the diversion of its business, for which the defendants are answerable (*Western Elec. Co. v Brenner*, *supra*, at 295). Moreover, the cited authority for the Court's declaration includes cases involving, variously, secret profits derived from transactions with an employer's customers (*Lamdin v Broadway Surface Adv. Corp.*, *supra*), conspiracy by real estate brokers with the executor of an estate to fraudulently obtain double payment of a commission (*Wechsler v Bowman*, 285 NY 284), recovery of overpayments under a contract of employment (*Johnson v Quayle & Son Corp.*, *supra*) and diver-

sion of business opportunities by officers and directors (*Evangelista v Queens Structure Corp.*, 27 Misc 2d 962; *Pictorial Films v Salzburg*, 106 NYS2d 626, *supra).*

Likewise, this Court's opinion in *Maritime Fish Prods. v World-Wide Fish Prods.* (100 AD2d 81 [Sullivan, J. P.], *appeal dismissed* 63 NY2d 675) should not be read to stand for the proposition, advanced by defendant, that an employer is generally entitled to recover salary paid to a disloyal employee. To the contrary, the Court stated (at 88): "Clearly, an agent may secretly incorporate a competitive business prior to his departure as long as he does not use his principal's time, facilities or proprietary secrets to build the competing business * * * [This employee], however, was not just preparing to go into his own business; he was in business for himself, while drawing a salary from a trusting employer." Thus, the conduct of that employee in carrying on his own business to the exclusion of his employer's interest is not materially different from the conduct of plaintiff herein in falsifying records to obtain payment for time not devoted to his employer's business. The conduct upon which recovery in *Maritime Fish Prods. (supra)* rests amounts to more than mere disloyalty; as here, it is conduct tantamount to fraud.

Plaintiff in this matter is neither an officer nor director of defendant hospital. There is no indication in the record that he occupies a position from which a fiduciary duty would arise (*e.g., Birnbaum v Birnbaum*, 73 NY2d 461 [partner]; *Chipman v Steinberg*, 106 AD2d 343 [joint venturer], *affd* 65 NY2d 842). Plaintiff has not diverted a business opportunity away from his employer nor profited from a transaction with a customer of his employer. Therefore, I conclude that while plaintiff's disloyalty constitutes a defense to his action seeking payment of back wages, it does not comprise the basis for a counterclaim for recovery of salary paid to plaintiff by defendant.

Accordingly, the order of the Supreme Court should be modified to grant the motion for leave to amend the answer to the extent of permitting defendant to interpose a defense predicated on plaintiff's misconduct and breach of his duty of loyalty and, except as so modified, affirmed.