LAMONT EDWARDS, Appellant, v MICHAEL J. CODD, as Police Commissioner of the New York City Police Department and as Chairman of the Board of Trustees of the Police Pension Fund, et al., Respondents.

First Department, September 27, 1977

*Stephen Jenkins* of counsel *(Joseph W. Allen,* attorney), for appellant.

*Irving Cohen* of counsel *(Leonard Koerner* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for respondents.

LUPIANO, J. P. This is an appeal by petitioner in an article 78 proceeding from a judgment of the Supreme Court, New York County, which granted the cross motion of respondents to dismiss the petition for failing to state a cause of action. The petition sought a judgment vacating and annulling respondent Police Commissioner's termination of petitioner's probationary employment as a Police Officer in the New York City Police Department and mandating that respondents perform their duty under the law to the effect that the Board of Trustees of Police Pension Fund, Article 2 be directed to accept and consider petitioner's application for disability retirement pursuant to section B18-43.0 of the New York City Administrative Code.

"Upon a 3211 (subd. [a], par. 7) motion to dismiss a cause of action * * * we look to the substance rather than to the form. Such a motion is solely directed to the inquiry of whether or not the pleading, considered as a whole, 'fails to state a cause of action.' * * * It was well settled and still is, of course, the rule that a pleading will not be dismissed for insufficiency merely because it is inartistically drawn. Where a pleading is attacked for alleged inadequacy in its statements, our inquiry should be limited to 'whether it states in some recognizable form any cause of action known to our law' *(Dulberg v. Mock,* 1 N Y 2d 54, 56). 'However imperfectly, informally or even illogically the facts may be stated, a complaint, attacked for insufficiency, is deemed to allege 'whatever can be implied from its statements by fair and reasonable intendment' *Kain*

*v. Larkin,* 141 N.Y. 144, 151). \* \* \* Finally, every pleading question should be approached in the light of the Civil Practice Law and Rules enactment that pleadings 'shall be liberally construed. Defects shall be ignored if a substantial right of a party is not prejudiced.' (CPLR 3026.)" *(Foley v D'Agostino,* 21 AD2d 60, 64-65.) In seeking to dismiss the petition, respondents admit that petitioner's services as a probationary police officer were terminated, effective April 25, 1975, without any reasons for such termination being articulated. Aside from this admission and their analysis of the petition upon which they conclude that the petition fails to state a cause of action, respondents offer nothing further other than the assertion that "[p]etitioner presents no evidence that he is incapacitated from the performance of city-service nor of any total or partial disability."

Study of the petition discloses the following: petitioner is a veteran, having served with the Marine Corps from 1963 to 1967. Upon entry into and discharge from the Marine Corps, he underwent physical examinations and was found to be physically fit and free from any heart or cardiovascular disease. Subsequent physical examinations in connection with his appointments as a Special Inspector with the Transit Authority and as a Correction Officer produced similar results. Having successfully competed in an open examination in September, 1973 and thereafter having been found qualified after physical examinations for the position of Police Officer, petitioner was appointed to the position of Patrolman in the New York City Police Department. Upon such appointment, petitioner became a member of the Police Pension Fund, Article 2 and made the required contributions thereto. On November 12, 1974, while at the Police Academy, the petitioner experienced an expansion of his chest muscles and abdominal pain. On November 14, 1974, while driving to work, he experienced severe chest pains and proceeded to New York Hospital where he was examined and released. He thereupon reported to his H.I.P. Medical Center and was given an electrocardiogram. Petitioner was then examined by Dr. Schermer, his District Police Surgeon, who referred him for electrocardiogram testing on November 16, 1974. As a result of such testing, Dr. Schermer on November 19, 1974, informed petitioner that there were indications he had suffered a heart attack. Thereafter two other doctors examined petitioner, took electrocardiograms and studied the electrocardiogram taken

at the Police Department Medical Unit. They found his heart to be normal. Thereupon petitioner was referred to Honorary Surgeon Hitzig who, after testing, stated that petitioner's heart was normal.

Petitioner further alleges that because he was denied access to his medical file he filed for accident disability retirement pursuant to section B18-43.0 of the Administrative Code and section 207-k of the General Municipal Law (the "Heart Bill"). Petitioner's services as a probationary officer were thereafter terminated by letter dated April 24, 1975, effective April 25, 1975, as aforesaid. The instant article 78 proceeding resulted.

It is clear that in this proceeding petitioner asserts two claims to relief. First, he seeks article 78 relief in the nature of mandamus to compel the respondents to perform a duty enjoined upon them by law, to wit, the processing and considered determination of his application for retirement pursuant to section B18-43.0 of the Administrative Code. Second, petitioner seeks review of the Police Commissioner's administrative determination to terminate petitioner's service with consequent annulment of such determination and reinstatement. "[A]bsent a statutory requirement, one who is terminated during a probationary period is not entitled to a hearing and may be dismissed without a reason being given for his removal. * * * In reviewing the Police Commissioner's action, the sole requirement is that the officer exercising the authority act in good faith" (*Haberman v Codd,* 48 AD2d 505, 507-508). Patently, it is the *good faith* exercise of authority in terminating his services which petitioner questions.

Membership in the Police Pension Fund, Article 2 is defined by section B18-12.0 of the New York City Administrative Code which pertinently states: "Membership; composition and eligibility.—a. The membership of the pension fund shall consist of all persons in city-service, as defined in this article, in positions in the competitive class of the civil service, who shall serve probationary periods, or who shall receive permanent appointments in the police force after the time when this section shall take effect." Therefore, for purposes of this appeal, we accept that petitioner at the time he applied for accident disability retirement was a member of the Police Pension Fund. Pursuant to section B18-43.0 of the New York City Administrative Code, petitioner would thus be entitled to have the Board of Trustees of the Police Pension Fund, Article 2 consider and rule upon his application for accident disability

retirement.[1] In connection therewith, note is taken of section 207-k of the General Municipal Law which under the circumstances presented on this record impels the presumption that petitioner's heart condition (if in fact he has a heart condition) was incurred in the performance and discharge of duty.[2]

The subsequent termination of petitioner's service as a probationary patrolman cannot serve to frustrate consideration of his prior application for accident disability retirement pursuant to section B18-43.0 of the Administrative Code based on section 207-k of the General Municipal Law. Section 7 of article V of the New York State Constitution expressly provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

The concurrence of events, to wit, the petitioner's application for accident disability retirement and shortly thereafter his termination by the Police Commissioner, viewed in the

---

1. Section B18-43.0 of the Administrative Code provides: "Retirement; for accident disability.—Medical examination of a member in city-service for accident disability and investigation of all statements and certificates by him or on his behalf in connection therewith shall be made upon the application of the commissioner, or upon the application of a member or of a person acting in his behalf, stating that such member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of wilful negligence on the part of such member and that such member should, therefore, be retired. If such medical examination and investigation shows that such member is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, the medical board shall so certify to the board, stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board shall retire such member for accident disability forthwith."

2. Subdivision a of section 207-k of the General Municipal Law provides: "Notwithstanding the provisions of any general, special or local law or administrative code to the contrary, but except for the purposes of sections two hundred seven-a and two hundred seven-c of this chapter, the workmen's compensation law and the labor law, any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death to a paid member of the uniformed force of a paid police department or fire department where such paid policemen or firemen are drawn from competitive civil service lists, who successfully passed a physical examination on entry into the service of such respective department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence."

context of the assertions contained in the petition, raises an issue as to whether the termination was authorized in good faith. Obviously, if the termination was effected with a view toward frustrating petitioner's application for disability retirement, the termination would be tainted with an aura of bad faith. These observations do not constitute a finding of fact or any preconceived view on the merits of the petitioner's requests for relief in this article 78 proceeding; they are merely enunciated to demonstrate that valid causes of action are asserted by petitioner warranting submission of an answer by respondents.

Accordingly, the judgment of the Supreme Court, New York Courty (RICCOBONO, J.), dated May 17, 1976, which granted the cross motion of respondents-respondents to dismiss the petition for failing to state a cause of action, should be reversed, on the law, without costs and disbursements; the cross motion should be denied and the petition reinstated and the matter remanded to Special Term for further proceedings.

SILVERMAN, EVANS and CAPOZZOLI, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 17, 1976, unanimously reversed, on the law, and vacated, without costs and without disbursements, the cross motion denied, the petition reinstated and the matter remanded to Special Term for further proceedings.